```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF PENNSYLVANIA
```

RONALD W. TELEPO, JR.,            :

      Plaintiff,             :        CIVIL ACTION NO. 3:08-2132

      v.                          :                (MUNLEY, D.J.)
                                                      (MANNION, M.J.)

TODD A. MARTIN, *et al.*,            :

      Defendants.          :

## **REPORT AND RECOMMENDATION**

In this action, plaintiff asserts, under 42 U.S.C. §1983, that his constitutional rights were violated in connection with his alleged inability to consult privately with his counsel, the public defender, at the Monroe County Courthouse prior to his sentencing hearing. *See* Doc. No. 28 (the Amended Complaint). Currently before the Court is defendants' Motion to Dismiss the Amended Complaint (the "Motion"). (Doc. No. 30.) For the reasons elaborated below, **IT IS RECOMMENDED THAT** the Motion be **GRANTED**, and that the Amended Complaint be **DISMISSED** with prejudice.

## **I.     FACTUAL AND PROCEDURAL BACKGROUND**

During state court criminal proceedings involving sentencing issues on April 14, 2008 and on May 12, 2009 in the Monroe County Courthouse, plaintiff allegedly declined to speak to his attorney and declined to make certain information known to his attorney because a private consultation area was not available for his and their use at the time plaintiff was being held in a holding cell. Plaintiff was unwilling to speak in ear shot of other persons (including the sheriff's deputies and other inmates) and incur the possible risk

of loss of his attorney-client privilege and other confidences. Plaintiff further alleges that in consequence of action by state officials denying him access to private consultation facilities (at the county courthouse), in conjunction with his own concomitant refusal to be fully forthcoming with his attorney in those circumstances, he was sentenced to "a longer period of incarceration because of the facts I was unable to relay to [my attorney] concerning my prior record score." Doc. No. 44 at 2-3.

The operative complaint, i.e., the Amended Complaint, (Doc. No. 28), is brought under 42 U.S.C. §1983. Plaintiff asserts claims against Sheriff Todd A. Martin (the "Sheriff"), and against Suzanne McCool, Donna Asure, and Therese Merli – Monroe County Commissioners (the "Commissioners," and collectively with the Sheriff, the "defendants"). Plaintiff argues that the defendants' failure or refusal to provide on demand (what he terms) an adequate private consultation area is: (A) a denial of his right to access the courts under the Fourteenth Amendment (including the Equal Protection Clause), the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Due Process Clauses of the Fifth and Fourteenth Amendment;[1] and (B) a denial of his right to confidential communications with

---

[1] *Cf. Lewis v. Casey*, 518 U.S. 343, 364-67 (1996) (Thomas, J., concurring) (noting that the Supreme Court has been unable to articulate in a majority opinion the specific "constitutional source" or clause giving rise to the access to the courts right fashioned by the Supreme Court in *Lewis* and in prior case law); *Peterkin v. Jeffes*, 855 F.2d 1021, 1036 n.18 (1988) (suggesting a variety of constitutional clauses as the source of the right to

2

his attorney.

Defendants' Motion, (Doc. No. 30), is supported by a brief, (Doc. No. 31), to which plaintiff has filed an opposition brief, (Doc. No. 32). Defendants have filed a reply, (Doc. No. 34). Additionally, plaintiff has filed two separate sur-replies, (Doc. No. 38 & Doc. No. 40), and two free-standing (and somewhat procedurally irregular) declarations, (Doc. No. 33 & Doc. No. 39). Finally, in light of plaintiff's subsequent motion to amend/correct the (amended) complaint (seeking to amend the complaint by bringing, among other things, a pendent state law malpractice claim against plaintiff's public defender (the "defender")), (Doc. No. 43), both parties made additional filings, (Doc. Nos. 44, 45, 46).[2]

## II. STANDARD OF REVIEW

The defendants' motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted. The moving party bears the burden of showing that no claim has

---

court access). None of the briefing of the parties suggests, and the Court does not understand the plaintiff to mean, that in adjudicating a right to court access claim, a separate legal analysis is required in regard to each constitutional clause that may function as the textual source of the right.

[2] Plaintiff's motion to amend/correct the amended complaint was addressed by memorandum and order on April 22, 2009. (Doc. No. 47 (denying all relief, except in regard to permitting plaintiff to seek punitive damages as a form of relief)).

3

been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d

4

1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

### III. LEGAL ANALYSIS

#### A. Plaintiff's Right To Access The Courts Claim

In *Bounds v. Smith*, 430 U.S. 817 (1977) and, more recently, in *Lewis Casey,* 518 U.S. 343 (1996), the Supreme Court of the United States explained the contours of the right to court access in the context of indigent prisoner litigation. In *Lewis*, Justice Scalia explained that *Bounds* and its progeny did not create either an express or specific right to legal assistance or to law libraries. Rather the relevant unit of government has a duty to provide indigent inmates with "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis,* 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). Thus, *Bounds* and its progeny,

> guarantees no particular methodology [in regard to state-provided facilities] but rather [guarantees] the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate, even an illiterate or non-English-speaking inmate, shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has

5

> not been provided, he demonstrates that the State has failed to furnish adequate [facilities mandated by the right to court access].

Lewis, 518 U.S. at 357 (quotation marks and italics omitted).

A constitutionally required component of any right to access claim (or any justiciable claim for that matter) is that the plaintiff have standing, including injury-in-fact. Lewis, 518 U.S. at 349. In order for a plaintiff to establish injury-in-fact in regard to a right to court access claim, the plaintiff must do more than show that the facilities provided are inadequate "in some theoretical sense;" rather, the plaintiff must "demonstrate that the alleged shortcomings in the [facilities provided by the state] hindered his efforts to purse a legal claim." Id. at 351. However, the "injury requirement is *not* satisfied by just any type of frustrated legal claim." Id. at 354 (emphasis added).

A prisoner plaintiff's right to court access has been historically connected to direct and collateral attacks on convictions and sentences, and challenges to the condition of confinement. Indeed, Section 1983 actions were permitted under the *Bounds* line of authority because the "demarcation line between civil rights actions [under Section 1983] and habeas petitions [the primary federal vehicle permitting collateral attacks on state convictions and sentences] is not always clear." Id. at 354-55 (quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974)). Finally, in *Lewis*, the Supreme Court held that the right to court access vindicates injury (i.e., frustrated legal

claims) connected to cases "attack[ing] sentences [and convictions], directly or collaterally, and in order to challenge [basic constitutional rights violations relating to] the conditions of [the prisoner's] confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355 (emphasis in the original); *see also id*. at 403 (Souter, J., dissenting in part) ("I see no reason at this point to accept the Court's view that the *Bounds* right of access is necessarily restricted to attacks on sentences or challenges to conditions of confinement.").

Simply put, this federal court is not hearing this case on direct review. This is a Section 1983 proceeding, not a habeas proceeding, i.e., it is not a (state or federal) collateral attack on the plaintiff's sentence or conviction. Finally, this case does not seek to vindicate a basic constitutional rights violation connected to the conditions of confinement. *See* Plaintiff's Reply Brief in Support at 1 ("This claim is *not* based on the conditions of my confinement ....") (emphasis added). (Doc. No. 40.) For these reasons, the Court agrees with the defendants: plaintiff's factual allegations, even if proved, cannot establish injury-in-fact component of standing as that is determined in relation to a right to court access claim. *See* Defendants' Brief in Support of Motion to Dismiss Amended Complaint at 6, 9-10. (Doc. No. 31.) The Court will therefore recommend dismissing this claim.

Additionally, the Court also notes that the right to court access is a right

to "access," i.e., to get into the courthouse door and to be heard. It is not a free floating or unlimited right extending to every procedural posture in every litigation. The Supreme Court has expressly "disclaim[ed]" the view that the "State must enable the prisoner ... to *litigate effectively* once in court." *Lewis, 518 U.S. at 354*. The plaintiff's claim here, such as it is, arose not because he was barred from presenting a claim, not because he was left to rot in jail; but rather, arose in connection with an actual hearing on sentencing before a state judge. In these circumstances, it makes little sense to say that he was denied "access" to the courts. *See, e.g.*, *Childs v. Pellegrin*, 822 F.2d 1382, 1385 (6th Cir. 1987) (holding that a prisoner plaintiff's having had a hearing before a judge and an opportunity to make a record for appeal, even absent counsel, indicates that the plaintiff had "meaningful access to the courts," under *Bounds*); *see generally Sheehan v. Beyer*, 51 F.3d 1170, 1176 (3d Cir. 1995) (quoting *Childs, supra*, approvingly).

> B. Right To Confidential Communications With His Attorney and Defendants' Qualified Immunity Defense

In this litigation, plaintiff has been provided with a public defender. Plaintiff has also been provided with "adequate consultation facilities ... at the Monroe County Jail," Doc. No. 43-2 (plaintiff's proposed Second Amended Complaint). Plaintiff does not allege that in-person oral communications were the only possible avenue of communications available to him to contact his attorney. Plaintiff does not deny that he could contact his attorney through the

8

mail or by telephone. Instead, the gravamen of plaintiff's complaint is that notwithstanding adequate consultation facilities at the jail, the public defender failed or refused (for some unexplained reason) to avail himself of the opportunity to make use of those facilities, and so plaintiff's only meaningful opportunity to consult privately was at the courthouse. (Again, plaintiff's allegations leave unaddressed the possibility of telephone or mail communications vindicating plaintiff's interest in confidential communications with his attorney.) In these circumstances, plaintiff argues, the government, here the county through its commissioners, and the county sheriff (through his deputies), were obligated to provide him with consultation facilities (on demand and without advance notice) at the courthouse to vindicate his right to confidential communications with his attorney.[3] He further alleges that because other inmates and sheriff's deputies were in earshot at the courthouse where he met with his attorney, i.e., in the holding cell, he was unwilling to divulge certain confidences and information, which as a result led to an increased sentence. (Here too, plaintiff fails to explain why discussion with his attorney at the defense table in the courtroom at the actual

---

[3] As with the right to court access discussed *supra*, the constitutional or textual source of the right to confidential communications is left uncertain in the parties' papers. It is unclear if its source is the First Amendment Petition Clause, the First Amendment Free Speech Clause, or (the textually unmoored) right to privacy. However, given that the Court recommends disposition of plaintiff's claim on qualified immunity grounds, nothing of consequence seems to turn on the distinction.

9

sentencing hearing would not suffice.) The subject matter of that increased sentence is now subject to appeal and/or post conviction review.

The defendants argue qualified immunity. The common law privilege of qualified immunity protects a public official who has undertaken a discretionary act from suit "to protect [such officials] 'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (Ginsburg, J.) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982) (Powell, J.)); *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005) (Fuentes, J.) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

But the immunity may be overborne under a two-part analysis. First, the court entertaining a defendant's assertion of immunity examines whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (Kennedy, J.) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (Rehnquist, J.)), *overruled in part by Pearson v. Callahan*, No. 07-751, --- U.S. ----, 129 S. Ct. 808 (Jan. 21, 2009) (Alito, J.) (maintaining two-part *Saucier* test, but permitting lower courts discretionary authority as to which element is to be examined first); *Wright*, 409 F.3d at 600. If the first inquiry establishes that no constitutional right has been violated, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201; *Wright*, 409 F.3d at 600. If the first inquiry establishes that a constitutional right

10

was violated, the court will then proceed to the second part, which "asks whether the right was clearly established." *Saucier*, 533 U.S. at 201; *Wright, 409 F.3d at 600*. This requires the court to consider whether the "contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 201 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (Scalia, J.)).

Apparently, both parties argue that plaintiff's claim, like other prisoner plaintiff claims asserting constitutional rights violations, should be assessed under the substantive legal test enunciated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). *See* Defendants' Brief in Support of Motion to Dismiss the Amended Complaint at 11 (citing *Williams v. Price*, 25 F. Supp. 2d 623, 629 (W.D. Pa. 1998) (citing *Turner, supra*)), (Doc. No. 31); Plaintiff's Brief in Opposition at 7 (same), (Doc. No. 32).[4]

*Turner* claims, like this one, are asserted under Section 1983. *See, e.g.*, Amended Compl. at 1, (Doc. No. 28); *Reynolds v. Federal Bureau of Prisons*,

---

[4] It is not altogether clear that *Turner* provides the appropriate legal test. *Turner* and its progeny addressed the adjudication of prisoner plaintiff or pre-trial detainee plaintiff federal rights claims. In these cases, the prisoner or pre-trial detainee was incarcerated in a full fledged jail or prison. In this action, the plaintiff was in a holding cell *within a courthouse*, where he was temporarily lodged in anticipation of a hearing. Admittedly, the plaintiff was incarcerated; he was in custody. But he was not under the exclusive control of department of correction authorities. Rather, the staff and policies of such facilities are under the control of the sheriff, or, perhaps, subject to direct judicial administration by county judges having administrative control over the courthouse building.

11

Civ. A. No. 9-0057, 2009 WL 960227, at *1 (M.D. Pa. April 7, 2009). An element of any Section 1983 action is state action, and concomitantly, that the state action ascribed to defendants proximately caused plaintiff's injury, *i.e.*, the deprivation of a federal right. *See* MARTIN A. SCHWARTZ & KATHRYN R. URBONYA, SECTION 1983 LITIGATION 6 (2d ed. 2008). In this action, state action by defendants arguably "caused" plaintiff's injury. But one could equally characterize plaintiff's injury as one being caused by the defender's unwillingness or inability to visit, meet, and consult with the plaintiff in the Monroe County jail prior to his sentencing hearing.[5] Indeed, this alternative characterization is plaintiff's characterization of the defender's conduct. *See, e.g.*, Doc. No. 32 at 5; Doc. No. 38 at 2; Doc. No. 43-2 at 2 (characterizing the defender's actions as negligent). Plaintiff's position is that he cannot control the defender. *Id.* That may very well be true. But that does not mean the "private" conduct of the defender can or should as a matter of policy or fairness be ascribed to the defendants in this action. *Cf.* Mem. & Order at 4 (April 22, 2009) (citing *Polk County v. Dodson*, 454 U.S. 312 (1981) for the proposition that a public defender's conduct is not state action for Section 1983 purposes). (Doc. No. 47.) Plaintiff does not even allege that any defendant was on actual notice of the fact that the defender had not met with

---

[5] The Court is not suggesting that the defender acted wrongfully. Rather, the Court is assuming that plaintiff's well pled factual allegations are true for the sake of adjudicating defendants' Motion. *See* Fed. R. Civ. P. 12(b)(6).

12

the plaintiff at the county jail in preparation for the two sentencing hearings at issue here.

Thus, on the facts as pled, there are two purported causes or proximate causes of plaintiff's alleged injury. If this Court were determining as a matter of first impression whether or not plaintiff could proceed against the state actors, the defendants, under Section 1983 when a private actor is equally or alternatively at fault, the Court would look to background principles of tort law. *See Monroe v. Pape*, 365 U.S. 167, 187 (1961) (noting that the Civil Rights Act "should be read against the background of tort liability"); *id*. at 207 & n.6 (Frankfurter, J., dissenting) (same); *Carey v. Piphus*, 435 U.S. 247, 253 (1978) (holding that Section 1983 creates a "species of tort liability"). One would naturally turn to discussion of supervening causes, intervening causes, joint causation, and alternative liability. *See, e.g.*, *Summers v. Tice*, 199 P.2d 1 (Cal. 1948). Where different state actors took actions causing a single injury, such an extension of Section 1983 would be a natural extension of existing tort law principles. *See, e.g.*, *Fillmore v. Page*, 358 F.3d 496, 507 (7th Cir. 2004) ("Joint liability [under Section 1983] is appropriate *only* where all of the [state] defendants have committed the negligent or otherwise illegal act, and so only causation is at issue. Fillmore has not established the predicate for the joint liability rule, and thus his claim cannot succeed on this basis.") (emphasis added).

In this action, however, the alternative cause of the single injury, as pled,

13

is a non-state actor, the defender. Had the defender met with his client at Monroe County jail facility, no harm would have been caused by the defendants' conduct. Presumably, the defendants relied on the defender to do just that, i.e., to meet with his client and to protect his client's confidences. *See* Pa. R. Prof'l Cond. 1.4 (duty to communicated with client); *id.* 1.6 (confidentiality rules). Thus although it is possible that, in the abstract, tort law principles may extend Section 1983 liability to the (alternative) state actor where a (non-complicit) non-state actor equally causes the harm, it is not *clear* that it does so. No party has cited any such case law, and the Court is aware of none. Absent such clearly established law, a reasonable sheriff or county commissioner would not know that the actions taken by the sheriff's deputies violated plaintiff's right to communicate confidentially with his attorney. Hence, defendants' qualified immunity defense should prevail.

  C. Personal Liability Against Defendants[6]

  Liability under §1983 is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

---

[6] The Court notes that much of the case law cited by plaintiff related to the legal standard for municipal liability. No municipality is a defendant in this action. *See* Mem. & Order at 4 n.1 (April 22, 2009). (Doc. No. 47.) Thus the case law cited by plaintiff is inapposite.

1988); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). A defendant who supervised a malfeasor but did not actually inflict the malfeasance is not liable under §1983 on a theory of respondeat superior unless he personally directed or had actual knowledge of and acquiesced in the deprivation because such nonfeasance equates personal, affirmative involvement. *Id*.; *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999); *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) ("It is also possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior ....").

Plaintiff's allegations simply do not rise to the requisite level of wrongdoing by defendants and essentially allege respondeat superior liability. Plaintiff fails to allege that the Commissioners had any (ex ante or ex post) knowledge of the defender's conduct or of the sheriff's deputies' conduct. It was their conduct – jointly or separately – that directly caused the alleged harm at issue here. Absent actual knowledge of the defender's conduct and the sheriff's deputies' conduct, it is difficult to understand how anything done by the Commissioners could amount to a section 1983 violation. Plaintiff seeks to bootstrap personal liability onto the Commissioners by alleging that they failed to "allocate[] the proper funds" to build adequate consultation facilities at the courthouse. (Doc. No. 28 at 3.) Plaintiff's interest in confidential communication with his attorney could have been vindicated, even at the courthouse, by the sheriff's deputies taking the plaintiff and his attorney to any

unused room in the building or even by withdrawing other persons from the holding cell or removing them from within earshot. *See* Amend. Compl. at 4 (suggesting that "a[n] [extant courthouse] law library or conference room should suffice" to vindicate plaintiff's right to confidential communications). Even if plaintiff has some right to confer confidentially with his attorney at the courthouse, that right is not coextensive with a right to a room built for that purpose. Plaintiff's claim against the Sheriff fails for the same reason: there are no allegations that he ordered the specific conduct of the deputies that caused the alleged injury, and there are no allegations that he had knowledge of the specific conduct or practice. That ends the inquiry. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (supervisory liability premised on defendant's being "aware" that "unreasonable risk" to a federal right existed).

D.      Plaintiff's Standing To Pursue Equitable Or Injunctive Relief

Section 1983 relief in the form of a prospective injunction requires standing. Standing requires more than mere speculation. The fact that in the past, defendants were unwilling to give plaintiff access to a private consultation area or its equivalent at the courthouse does not mean, without more, that they will do so again in the future should plaintiff again find himself in the holding cell at the Monroe County courthouse. In other words, plaintiff must demonstrate that he faces a "real or immediate threat that [he] would be wronged again" in this manner. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Rizzo v. Goode*, 423 U.S. 362 (1976). Here plaintiff faces no actual or

16

immediate threat. As he admits, the threat of a repetition is wholly contingent on his prevailing on appeal or in PCRA proceedings and then being "remand[ed] back to the Monroe County Jail" for resentencing. Amended Compl. at 3. Such a claim is patently insufficient to confer standing to seek injunctive relief under Section 1983.

## IV. CONCLUSION

For the reasons elaborated above, **IT IS RECOMMENDED THAT** the Motion, (Doc. No. 30), be **GRANTED**, and that the Amended Complaint be **DISMISSED** with prejudice.

s/ *Malachy E. Mannion*  
**MALACHY E. MANNION**  
**United States Magistrate Judge**

**Dated: May 4, 2009**

O:\shared\REPORTS\2008 Reports\08-2132-01.wpd