**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD W. TELEPO, JR.,** | : | No. 3:08cv2132 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **TODD A. MARTIN,** | : | |
| **SUZANNE MCCOOL,** | : | |
| **DONNA ASURE,** | : | |
| **THERESA MERLI,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**<u>MEMORANDUM</u>**

Before the court are plaintiff's objections (Doc. 49) to Magistrate Judge

Malachy E. Manion's report and recommendation (Doc. 48) that defendants' motion

be granted and plaintiff's complaint be dismissed with prejudice. The matter has

been fully briefed and is ripe for disposition.

**I. BACKGROUND**

While incarcerated at the Monroe County Correctional Facility (MCCF),

Plaintiff Telepo was transported to the Monroe County Courthouse on April 14, 2008

and May 12, 2008 for hearings regarding his sentencing. (Plaintiff's Brief in

Opposition to Defendants' Motion to Dismiss (Doc. 32)(hereinafter "Plaintiff's MTD

Opposition Brf.") at 1-2). The plaintiff allegedly requested a private space to speak

with his attorney while in the holding area at the courthouse and was denied such

accommodations by the sheriff's deputies. (Amended Complaint (Doc. 28)(hereinafter "Am. Comp.") at 2). Because there were other inmates and sheriff's deputies nearby, the plaintiff maintains that he declined to disclose information to his public defender that would have led to a lower prior record score and, as a result, a shorter sentence. (Id. at 2-3). Plaintiff feared he would lose his attorney-client privilege if he spoke with his attorney where others could overhear their conversation. (Id.).

The plaintiff's amended complaint asserts claims under 42 U.S.C. § 1983 against Sheriff Todd A. Martin ("the sheriff") and against Monroe County Commissioners Suzanne McCool, Donna Asure, and Therese Merli ("the commissioners") ("the sheriff" and "the commissioners" together as "defendants") (Id.). The plaintiff asserts that the defendants' refusal or failure to provide "private attorney consultation facilities" constituted a violation of (1) his rights as a prisoner to access the courts and (2) his right to confidential communication with his attorney. (Id.). The sheriff allegedly "[failed to provide adequate] training, supervision and discipline to sheriff's deputies under his authority with respect to the plaintiff's constitutional rights[.]" (Id. at 2). The commissioners' challenged conduct was that they "have not allocated the proper funds needed to renovate or construct adequate consultation facilities that are soundproof and provided with adequate furnishings and ventilation." (Id. at 3).

The defendants filed a motion to dismiss (Doc. 30) the amended complaint

2

(Doc. 28) pursuant to FED. R. CIV. P. 12(b)(6).  Magistrate Judge Mannion

recommended the dismissal of the plaintiff's amended complaint with prejudice.

(Doc. 48 at 17). The plaintiff challenged the report and recommendation with a

motion to alter judgement. (Doc. 49).

## II.  STANDARD OF REVIEW

In disposing of objections to a magistrate judge's report and recommendation,

the district court must make a *de novo* determination of those portions of the report

to which objections are made.  28 U.S.C. § 636 (b)(1)(C); see also Henderson v.

Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify,

in whole or in part, the findings or recommendations made by the magistrate judge.

The district court judge may also receive further evidence or recommit the matter to

the magistrate judge with instructions. Id.  When no objections to a portion of the

report and recommendation have been filed, we must determine whether a review of

the record evidences plain error or manifest injustice to decide whether to adopt the

report.  See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R.

CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the

court need only satisfy itself that there is no clear error on the face of the record to

accept the recommendation"); 28 U.S.C. § 636(b)(1).

Here, the court ruled on the defendant's motion to dismiss the complaint for

failure to state a claim under FED. R. CIV. P. (b)(6).  When a Rule 12(b)(6) motion is

filed, the sufficiency of a complaint's allegations are tested.  The issue is whether the

facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## III. PLAINTIFF'S OBJECTIONS

This court will address each of the plaintiff's objections to Magistrate Judge Mannion's report and recommendations in turn.

## A. Plaintiff's Assertion of Direct Liability Against the Defendants

Magistrate Judge Mannion found that the plaintiff's complaint was insufficient to support direct liability against the sheriff and the county commissioners. (Doc. 48 at 14-16). The plaintiff objects and argues that the sheriff and county commissioners should be held directly liable under Section 1983 based on the failure to supervise the sheriff's deputies or to appropriate funds and direct the construction of dedicated private meeting facilities for prisoners temporarily held at the county courthouse. (Plaintiff's Motion to Amend or Alter the Judgement (Doc. 49)(hereinafter "Plaintiff's MAJ") at 6-7).

Regarding personal liability under Section 1983, the Court of Appeals for the Third Circuit has stated that

the standard for *personal liability under section 1983* is the same as that for

4

municipal liability. See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989). That standard was enunciated in Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978): *"when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity* [and the policy-maker individually] *is responsible under section 1983." Where, as here, the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to "deliberate indifference" to the rights of persons with whom those employees will come into contact*. City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Carter v. City of Philadelphia, 181 F.3d 339, 356-57 (3d Cir. 1999) (emphasis added).

In order to make out a claim under Section 1983, the plaintiff must establish that each defendant had personal involvement in the alleged wrongs. Rizzo v. Goode, 423 U.S. 362, 375-76 (1976); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual liability under Section 1983 must be direct rather than vicarious in nature and cannot be based solely on the operation of doctrine of respondeat superior. Id. While the defendant must play an "affirmative part" in the alleged misconduct to be individually liability under Section 1983, non-feasance on the part of the defendant may be sufficient to constitute an affirmative role in the misconduct if the individual defendant in a supervisory role had actual knowledge of and acquiesced in his subordinate's violations" of the plaintiff's rights. Baker v. Monroe Twp., 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citations omitted).

However, the plaintiff's complaint against the individual county commissioners fails for want of alleging that they were directly involved in violating the plaintiff's rights. The plaintiff's complaint states that

5

> Defendants McCool, Asure and Merli, Monroe County Commissioners, violated my constitutional rights . . . by not providing me adequate consultation facilities within the Monroe County Courthouse . . . the defendants have not allocated the proper funds needed to renovate or construct adequate consultation facilities that are soundproof and provided with adequate furnishings and ventilation.  These constitutional violations are caused by custom that is permanent and well settled as well as long standing to have the force of law (sic).

(Am. Comp. at 3).

The plaintiff points out that the commissioners' offices are located in the county courthouse and asks rhetorically, "how could they not see or know about this situation?"  (Plaintiff's MAJ at 7).  The plaintiff acknowledges that "since no consultation facilities even exist [at the courthouse] a law library or conference room should suffice without the presence of sheriff's deputies."  (Am. Comp. at 4).

Assuming these facts as true and drawing all reasonable, favorable inferences in favor of the plaintiff, the complaint fails to support direct liability of the individual county commissioners under Section 1983.  First, it cannot be reasonably inferred from the alleged acts of the defendants that it was the policy of the county commissioners to deny prisoners awaiting hearing their right to confidential communication with counsel.  Even if the county commissioners have not appropriated funds or directed the construction of facilities dedicated as meeting space for prisoners and their attorney while temporarily held at the courthouse prior to hearings, such a failure does not amount to a violation of the plaintiff's rights.  The plaintiff's acknowledgment that a conference room or law library would provide an adequate environment in which to meet with counsel so long as it was sufficient to

6

protect the attorney-client privilege undermines the argument that the failure to construct dedicated meeting space represents the establishment of policy by the county commissioners to violate the plaintiff's rights. Absent establishment of such a policy or direct involvement by the individual defendants, they are not subject to direct liability under Section 1983. See Carter, 181 F.3d at 356-57.

Furthermore, plaintiff's complaint is insufficient to support direct liability of the county commissioners based on their failure to supervise subordinate employees whose conduct violated the plaintiff's rights. The county commissioners oversee the conduct of county employees in the sense that they provide legislative oversight of the county administration. Even if "supervisory relationship" were defined so broadly as to include the relationship between the commissioners and the sheriff's deputies Section 1983, the plaintiff has not claimed actual knowledge of and acquiescence in the challenged conduct, which are both necessary preconditions to direct liability under Section 1983 for failure to supervise. See Baker, 50 F.3d at 1191 n.3. The fact that the county commissioners' office is located in the same building as the holding area for prisoners awaiting a hearing is not sufficient to support a reasonable inference that the county commissioners had actual knowledge of conduct violating the plaintiff's rights and the commissioners acquiesced to such conduct by their subordinates.

The plaintiff's complaint is, however, sufficient to support direct liability against the sheriff under Section 1983. The plaintiff's complaint avers that the sheriff's

failure to provide adequate training, supervision, and discipline to the deputies under his authority constituted a violation of the plaintiff's rights for which the sheriff is individually liable under Section 1983. (Am. Comp. at 2). The plaintiff maintains that these failures by the sheriff resulted in the violation of his rights – that they caused the sheriff's deputies to deny the plaintiff's request to meet privately with his attorney while he was in the courthouse holding area. (Id.). The plaintiff asserts that the denial by sheriff's deputies of such requests was the norm rather than an aberration – "this was not an isolated incident, but treatment of inmates as a whole in Monroe County." (Id.). In his challenge to Magistrate Judge Mannion's report and recommendation, the plaintiff states that the sheriff's personal office and the holding area for prisoners awaiting hearings are located "within the Sheriff's Office on the 2nd floor of the courthouse." (Plaintiff's MAJ at 6). The plaintiff's assertions – the direct supervisory relationship between the sheriff and his deputies, the proximity of the sheriff's individual office to the holding area where the alleged violations occurred, and that the challenged conduct was the norm with regard to requests like the plaintiff's – support a reasonable inference the sheriff's actual knowledge and acquiescence in the deputy's conduct that the plaintiff claims violated his rights.

Therefore, while this court will dismiss the complaint, the dismissal is not on the grounds that the pleading is insufficient to support direct liability for the sheriff under Section 1983. The court thus finds that the sheriff could be personally liable under Section 1983. The court will, therefore, address whether the plaintiff has

8

stated a claim for a constitutional violation in the sheriff's conduct.

## B. Plaintiff's Right to Access the Courts Claim

Indigent prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1977). The right of access to the courts has been protected by Supreme Court rulings prohibiting prison officials from actively interfering with or prohibiting attempts by inmates to prepare or file court documents as well as cases requiring the waiver of various administrative fees for indigent defendants. Lewis, 518 U.S. at 350. The right of access to the courts imposes a duty on the government provide prisoners with the "means for ensuring 'a *reasonably adequate opportunity* to present claimed violations of fundamental constitutional rights to the courts.'" Id. at 351 (quoting Bounds, 430 U.S. at 825) (emphasis added).

Though not explicitly stated in Bounds, a claim based on denial of access to the court requires that the plaintiff show an injury in fact. Id. at 351-52. The prisoner plaintiff must "demonstrate that a non-frivolous legal claim had been frustrated or was being impeded, " and "not . . . just any type of frustrated legal claim." Id. at 353-54. Typically, the right to access the courts has applied to "direct appeals from the convictions for which [the inmate was] incarcerated . . . or habeas petitions . . . [and] 'civil rights actions'- i.e., actions under 42 U.S.C. Section 1983 to vindicate 'basic constitutional rights.'" Id. at 354 (citations omitted).

The Supreme Court has held that the inmate's right of access to the courts

9

does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to *attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.* Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355. (emphasis added).

The Supreme Court, in Lewis, expressly rejected the suggestion that the prisoner's right of access to the courts demands that the State "enable the prisoner to discover grievances, and to litigate effectively once in court." Id. at 354 (citing Bounds, 430 U.S., at 825-826, and n.14). The inquiry with regard to the plaintiff's right to access claim pursuant to Lewis and Bounds is two-fold: (1) is the prisoner plaintiff's claim one to which the right of access to the courts applies - i.e. a direct or collateral attack on his conviction or sentence, a habeas petition, and/or a Section 1983 civil rights action, and (2) has the prisoner plaintiff plead facts sufficient to demonstrate an injury in fact caused by the challenged decision or conduct. Plaintiff's claim here is in the form of a civil rights action. See Id. at 351. The court will therefore focus on the second part of this inquiry – did the inability to meet privately with his attorney while in holding at the county courthouse hinder the plaintiff's efforts to *pursue* a legal claim? See Id.

A prisoner's right of access to the courts guarantees the prisoner a "reasonably adequate opportunity" to directly or collaterally appeal a judgment or sentencing decision, file a habeas petition, and bring claims under Section 1983

10

alleging violation of the prisoner's constitutional rights, often related to the conditions of the prisoner's incarceration. See Lewis, 518 U.S. at 354. The actual injury component of a denial of access claim requires the plaintiff to show that the challenged conduct frustrated his ability to pursue an appeal, file a habeas petition, or assert a claim under Section 1983. See Id. at 351-53.

Plaintiff Telepo's amended complaint avers that the failure of the sheriff and county commissioners to provide private consultation facilities at the county courthouse denied his right of access to the courts. (Am. Comp. at 2-3). Specifically, he states that on April 14, 2008 and May 12, 2008, he was "forced to meet with [his] attorney in the presence of the [sheriff's] deputies as well as other inmates within a holding cell area of the Monroe County Courthouse." (Id. at 2). The plaintiff asserts this denial caused him injury because the lack of a private meeting in the county courthouse caused the public defender to be unprepared during criminal proceedings in the Court of Common Pleas in Monroe County. (Id. at 3). Specifically, the plaintiff claims he was "injured . . . by not being able to speak privately with his public defender" and maintains that "the public defender was ill prepared to argue the issues" pertaining to the plaintiff's prior record score, which resulted in the plaintiff receiving a longer sentence than if he had been able to confer privately with his attorney while he was in the courthouse holding area. (Id. at 3).

Magistrate Judge Mannion found that "the plaintiff's allegations, even if proved, cannot establish [the] injury-in-fact component of standing, as [standing] is

determined in relation to a right to court access claim" and, therefore, recommended that the plaintiff's right of access claim be dismissed pursuant to FED. R. CIV. P. 12(b)(6). (Magistrate Judge's Report and Recommendation (Doc. 48)(hereinafter "R&R") at 7).

The plaintiff asserts that Magistrate Judge Mannion misunderstood the plaintiff's statement, "[t]his claim is not based on the conditions of my confinement[.]" (Plaintiff's MAJ at 1). The plaintiff also asserts that he is attacking his sentence and therefore does state a claim for denial of access to the courts. (Id. at 1)

> I was challenging the aspects of my sentencing by trying to argue the District Attorney's erroneous calculation my prior record score in a more private and soundproof area . . . If I was given a more proper area to confer with my public defender, (which is challenging the conditions of my confinement), I would have been able to relay information pertinent to a shorter term of incarceration (challenging my sentence and conviction).

(Id.)

The plaintiff disagrees with the length of sentence imposed and with the conditions under which he met with the public defender at the courthouse, however these disagreements alone are insufficient to survive a Rule 12(b)(6) motion in this case. Simply put, the plaintiff's complaint, taken in the light most favorable to him, does not aver that his inability to meet in private with the public defender while in the Monroe County Courthouse prevented him or frustrated his efforts in filing a direct or collateral challenge to his conviction or sentence, a habeas petition, or a claim under Section 1983. See (Id. at 2-3). The plaintiff would be required to show such an injury to sustain a claimed violation of his right of access to the court. See Lewis,

12

518 U.S. at 354. This court finds, therefore, that the plaintiff's claim for violation of his right of access to the courts should be dismissed, and will adopt the report and recommendation on this point.

## C. Plaintiff's Right to Confidential Communications with His Attorney and Defendant's Qualified Immunity Defense

The plaintiff asserts that the defendant county commissioners were obligated to provide private consultations facilities to him at the Monroe County Courthouse. (Am. Comp. at 3). The plaintiff also asserts that he requested to speak with his attorney in private while confined in the holding area at the Monroe County Courthouse and that his request was denied by sheriff's deputies on account of inadequate training and supervision by the sheriff. (Id. at 2). The plaintiff claims that these alleged failures by the county commissioners and the sheriff violated the plaintiff's right to "unobstructed and confidential communication with his attorney." (Id.).

Magistrate Judge Mannion recommended disposition of this issue in favor of the defendants based on the doctrine of qualified immunity. (R&R at 9 n.3). The doctrine of qualified immunity holds that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining whether qualified immunity applies is a "two-step

13

process." Miller v. Clinton County, 544 F.3d 542, 547 (3d Cir. 2008). First, the court must "'decide whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity is at an end; the officer is entitled to immunity.'" Id. (quoting Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2003)). Second, "[o]nce it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established." Id. In other words, the court must ask if the right and its particular scope is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Though this sequence for assessing qualified immunity "is often appropriate, it should no longer be viewed as mandatory." Pearson v. Callahan, — U.S. —, 129 S. Ct. 808, 818 (Jan 21, 2009). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

Prisoners have a right to confidential communication with their attorney. See Williams v. Price, 25 F. Supp. 2d 623 (W.D. Pa. 1998). In Williams, the court found that the conditions under which the inmates were permitted to meet with their attorneys violated the plaintiffs' rights to confidential communication with counsel.

14

Id. at 628-29. The defendants did not dispute that the facilities for prisoners to meet with their attorney were not sound proof and instead argued simply that the prisoners had no right to confidential communication with [counsel]." Id. at 624. The court rejected the defendant's argument, recognizing that the plaintiffs did have a right to confidential communication with counsel and found that the absence of any facilities accommodating confidential communications in the prison where the plaintiffs are permanently housed was a violation of the plaintiff's rights. Id. at 628-29.

Here, the defendants correctly point out a key distinction between Williams and the present case – namely that the present case involves (a) the denial of private meeting quarters while the plaintiff was in transit from the MCCF to the courthouse and temporarily confined in the courthouse holding area awaiting a hearing and not (b) the unavailability of access to such facilities at the prison where the defendant is housed permanently, as were the circumstances in Williams. (Defendant's Brief in Support of Motion to Dismiss (Doc. 31)(hereinafter "Def. MTD Support Brf.") at 10-13).

A prisoner's right to confidential communication with his attorney is clearly established and, for the purposes of analysis under Rule 12(b)(6), this court will assume that the defendants violated the plaintiff's right. Even assuming a violation by the defendants, the defendants are shielded by qualified immunity. In the absence of any authority supporting the proposition that failure to provide private consultation facilities to prisoners temporarily awaiting a hearing in a courthouse

15

holding area, this court cannot say that a "reasonable official [– a sheriff or county commissioner–] would understand that what he [or she] is doing violates that right" under the circumstances present in this case. See Saucier, 533 U.S. at 201 (citing Anderson, 483 U.S. at 640). This court therefore finds – consistent with Magistrate Judge Mannion's report and recommendation – that the defendants are entitled to qualified immunity.

Plaintiff disagrees with Magistrate Judge Mannion's treatment of Williams and argues that defendants are not protected by qualified immunity because they violated the right clearly established in Williams. (Plaintiff's MAJ at 4). Although Williams clearly establishes that the failure to provide any private meeting space at the prison where the plaintiff is housed permanently violates the prisoner's right to confidential communication with counsel, this court agrees with Magistrate Judge Mannion and the defendants that the factual distinctions between Williams and the instant case are significant enough that it cannot be said that the defendants' conduct was a clear violation of the plaintiff's right to confidential communication with counsel, if it was a violation of that right at all. As such, the defendants are entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Miller v. Clinton County, 544 F.3d 542, 547 (3d Cir.2008) (discussing two-step process for determining qualified immunity). The court will adopt the report and recommendation on this point.

**D. Plaintiff's Standing to Seek Equitable or Injunctive Relief**

16

Magistrate Judge Mannion recommended the conclusion that the plaintiff

lacked standing to seek equitable or injunctive relief.  (R&R at 16-17).  The plaintiff

maintains that he has standing to seek such relief.  (Plaintiff's MAJ at 8).

In order to satisfy the standing requirement for jurisdiction under Article III,

> plaintiffs must demonstrate a "personal stake in the outcome" . . . Abstract
> injury is not enough. The plaintiff must show that he "has sustained or *is
> immediately in danger of sustaining some direct injury*" as the result of the
> challenged official conduct and the injury or *threat of injury must be both "real
> and immediate," not "conjectural" or "hypothetical."*

City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (internal citations omitted).

The Court of Appeals for the Third Circuit has held that "in order to obtain

standing for prospective relief, the plaintiff must establish a 'real and immediate

threat that he would again be [the victim of the allegedly unconstitutional practice.]'"

Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987) (quoting Lyons, 461 U.S. at 105).

The plaintiff's complaint prays for (1)  "a preliminary and permanent injunction

ordering Defendants Martin, McCool, Asure and Merli to arrange for inmates under

their authority to meet with defense counsel in an area that permits inmates [ ]

unobstructed and confidential communication with the [attorney] assigned to them

and that the court (2) "order Defendants McCool, Asure and Merli as Monroe County

Commissioners to allocate the proper funds needed to construct or renovate the

Monroe County Courthouse and build adequate consultation facilities that are

soundproof and adequately furnished and ventilated."  (Am. Comp. at 4).

The plaintiff is currently housed at SCI-Houtzdale, not MCCF or the Monroe

County Courthouse. (Plaintiff's MTD Opposition Brf. at 1). Nonetheless, the plaintiff maintains that he has filed an appeal with the Pennsylvania Supreme Court and that if his appeal is successful and the case is remanded, he will be returned to the Monroe County Courthouse where he will likely be subject to the same treatment he alleges violated his rights. (Id. at 14-15). Based on this contingent scenario, the plaintiff argues that he has standing to seek an injunction. (Id.). Taking these facts as true, the most favorable inference that can reasonably be drawn is that it is possible he will be detained in the holding area in the Monroe County Courthouse and that he will possibly be subjected to the challenged conduct of the defendants. That potential outcome is preconditioned on the success of the plaintiff's appeal and his being remanded to the Monroe County Courthouse for re-sentencing. This "hypothetical" or "conjectural" threat that the plaintiff might be subjected to the challenged conduct in the future is insufficient to support standing to seek equitable or injunctive relief. The court will adopt the report and recommendation on this point.

## IV. CONCLUSION

For the reasons stated above, the court will adopt Magistrate Judge Mannion's report and recommendation (Doc. 48). The defendant's motion to dismiss (Doc. 30) will be granted. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD W. TELEPO, JR.,** | : | No. 3:08cv2132 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **TODD A. MARTIN,** | : | |
| **SUZANNE MCCOOL,** | : | |
| **DONNA ASURE,** | : | |
| **THERESA MERLI,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 12th day of August 2009, plaintiff's objections (Doc. 49)

to the report and recommendation of Magistrate Judge Malachy E. Mannion (Doc.

48) are hereby **OVERRULED**.  The report and recommendation are hereby

**ADOPTED**, as follows:

1. The magistrate judge's report and recommendation is **ADOPTED**;

2. The defendant's motion to dismiss (Doc. 30) is hereby **GRANTED WITH**

   **PREJUDICE**; and

3. The Clerk of Court is directed to **CLOSE** the case.

                                          **BY THE COURT**

                                          **s/ James M. Munley**
                                          **JUDGE JAMES M. MUNLEY**
                                          **United States District Court**